AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Oregon

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) |
| | ) |
| DYLAN FORD | ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

Certified to be a true and correct
copy of original filed in this District
Dated: __07/29/2026__
**MELISSA AUBIN, Clerk of Court**
U.S. District Court of Oregon
By: _s/E. Toles_____
Pages__1__Through _____18_____

Case No.  6:26-mj-201

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   June 12, June 14, and July 5, 2026   in the county of   Lane   in the
_____   District of   Oregon   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b) | Attempt enticement of a minor |
| 18 U.S.C. § 2252A(a)(2) | Attempt receipt of child pornography |
| 18 U.S.C. § 2251(a) and (e) | Attempted Sexual Exploitation of Children |

This criminal complaint is based on these facts:

See attached Affidavit, which is incorporated herein by reference.

☑ Continued on the attached sheet.

_____/s/_____ via Telephone
_Complainant's signature_

_____ Special Agent, FBI
_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at  6:17 p.m.  a.m./p.m.

Date:  July 28, 2026 _____

_Amy E. Potter_
_Judge's signature_

City and state:   Eugene, Oregon _____

Amy E. Potter, U.S. Magistrate Judge
_Printed name and title_

DISTRICT OF OREGON, ss:          AFFIDAVIT OF ███████████

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, ███████████ being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since December 2022.  My current assignment involves investigating child exploitation crimes.  My training and experience include investigating federal criminal violations related to child exploitation, and child pornography among other federal violations. Prior to working for the Federal Bureau of Investigation, I worked for the Metropolitan Nashville Police Department where I was a Detective in the Crimes Against Children Unit for three years. I have gained experience through work relating to conducting these types of investigations.  I have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.  Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2252A, and I am authorized by law to request a complaint and arrest warrant.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Dylan **FORD**, for violations of Title 18, United States Code Sections 2251(a) and (e) (production of child pornography and attempt), 2422(b) (enticement of a minor and attempt), and 2252A(a)(2) (receipt of child pornography and attempt) (hereinafter, "Target Offenses").  As set forth below, there is probable cause to believe, and I do believe, that **FORD** committed the Target Offenses.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all my knowledge about this

**Affidavit of** ███████████                                                          **Page 1**

matter.  The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4.      Title 18, United States Code, Sections 2251(a) and (e) provide that it is unlawful to use, persuade, induce, entice, or coerce any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign

5.      Title 18, United States Code, Section § 2422(b) provides as follows: Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

6.      Title 18, United States Code, Section 2252A(a)(2) makes it a crime to knowingly receive or distribute any child pornography that has been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.  Title 18, United States Code, Section 2252A(b)(1) additionally prohibits any attempt to do the same.

/ / /

/ / /

/ / /

**Affidavit of** ▮▮▮▮▮▮▮▮▮▮▮                                          **Page 2**

**Statement of Probable Cause**

*Summary of investigation*

7.    On or around June 30, 2026, the Linn County Sheriff's Office ("Linn CSO") was contacted by the Lane County Sheriff's Office ("Lane CSO").  Lane CSO requested that Linn CSO investigate allegations that Lane CSO had become aware of that **Dylan FORD**, who is a sheriff's deputy with the Lane CSO, had engaged in online communications with a minor female ("Minor Victim" or "MV1") who is younger than sixteen years old.[1]  The allegations included that **FORD** and MV1 allegedly exchanged sexually explicit images.  A detective with the Linn CSO contacted the FBI in part because MV1 resides in another country, as explained below.  As part of the investigation, investigators obtained a federal search warrant and seized and searched **FORD's** cell phone while he was at work.   Investigators located numerous conversations with self-described minors as young as 14 years old.  In those conversations, **FORD** repeatedly requests and receives sexually explicit material from the minors, as detailed below.

*Communications with MV1 on TikTok*

8.    On or around May 1, 2026, a woman whose identity is known to me (hereinafter "Adult Witness 1" or "AW1"), who resides in Lane County, Oregon, was contacted on TikTok[2] by a user later identified as MV1. The opening message from MV1 to AW1 read, "hi don't block me pls i just need to talk to u i promise im not a scammer, its really important please."

---

[1]    The identity of MV1 is known to me, but her name and precise age are anonymized to protect her identity.

[2]    TikTok is a social media platform that allows users to create, edit, discover, and share short-form videos. TikTok also allows users aged 16 and older to send and receive messages, including text, TikTok videos, GIFs, and stickers

**Affidavit of** ▓▓▓▓▓▓▓                                                              **Page 3**

9.	AW1 saw the message almost two months later, on or around June 28, 2026.  She responded to MV, "?"  AW1 and MV1 began communicating over the next several days on TikTok.  All the communications on TikTok between AW1 and MV1 have been reviewed by the Linn CSO and the FBI.  In summary, based on a review of the messages, it appears that MV1 reached out to AW1 because MV1 believed her online "boyfriend" was AW1's husband, a man whose identity is known to me (hereinafter "Adult Witness 2" or "AW2").  MV1 explained to AW1 that MV1 had been communicating with her boyfriend online and sharing sexually explicit photographs with him.

10.	MV1 explained to AW1 that she believed her boyfriend was AW2 because MV1 received a picture from him depicting AW2.  MV1 explained she received the picture and performed a reverse image search using Google[3] and learned the picture was AW2's publicly-available Facebook profile photograph.

11.	After learning about this information from MV, AW1 confronted her husband, AW2, about the allegations that AW2 was in an online relationship with MV. AW2 immediately denied any involvement with MV1 and allowed AW1 to search his phone. AW1 advised investigators that AW2's phone did not reflect any exchanges with MV.

12.	During the course of the investigation, investigators interviewed AW2, who denied any communication with MV1 and denied any wrongdoing.  AW2 consented to allowing investigators to perform a cursory review of AW2's device.  Investigators observed nothing of evidentiary value on the device and found nothing indicating that AW2 was the individual who MV1 claimed to be in a relationship with.

---

[3]	FBI conducted a reverse image search of the photograph provided by MV1 and confirmed that it was AW2's publicly available profile picture.

**Affidavit of** ██████████	**Page 4**

13.    Once AW1 was satisfied that her husband, AW2, was likely not the subject who MV1 claimed to be communicating with, AW1 continued to communicate with MV1 to determine who MV1 was talking with.  This was both out of concern for MV1 being in online sexual contact with an adult and out of concern and confusion given that MV1 received a photograph of AW1's husband, AW2.  MV1 explained to AW1 that she had communicated with the subject on Telegram.[4]

14.    MV1 explained that, besides the Facebook profile photo of AW2, her online boyfriend—the subject of this investigation—had sent MV1 a separate and distinct image of himself.  MV1 then sent AW1 the other photograph the subject had sent her.[5]  AW1 provided that image to investigators.  The photograph is depicted below, and shows a white male with a beard and chest hair rising to his clavicle area (note, I have added in two text boxes to redact where MV's first name is displayed on the photograph):

---

[4]    Telegram is a cloud-based messaging app where users can exchange text messages, hold voice calls, share files, join groups of up to 200,000 members, and subscribe to public broadcast channels. Telegram has a "secret" function, which allows users' text conversations and video calls to be protected through end-to-end encryption.

[5]    A reverse image search was conducted on this image. There were no publicly available photographs that returned from that photograph. This leads investigators to believe that the photograph depicted above was a unique photograph that is not publicly available.

**Affidavit of** ███████████                                                      **Page 5**



Investigators inspected this photograph and, based on the words "Disappearing Photo"[6] at the top

of the screenshot, investigators believe that the subject used the app Telegram to send the

photograph.  According to MV, MV1 took a photograph of the "Disappearing Photo" with

another device so as not to alert the person who sent the "Disappearing Photo" and to capture the

photograph before it disappeared.

15.    After receiving that image from MV, AW1 showed the photograph to AW2, who

immediately recognized the man depicted in the photograph as Dylan **FORD**, who is AW2

yearslong co-worker. The photograph below is a Department of Motor Vehicles (DMV)

photograph of **FORD** that investigators located for comparison. The DMV1 photograph was

taken in 2021.  Investigators also learned from DMV1 records that **FORD**'s address is in

---

[6]    Disappearing photos are an option on Telegram allowing users to select a photograph
from their media on their device to add to Telegram, then users have the option to choose how
long the photo will be visible after being opened (e.g., 3 seconds, 10 seconds, etc). Once the
photo is viewed, it will automatically disappear.

**Affidavit of** ███████████                                                              **Page 6**

Eugene, Oregon. Once investigators learned that the subject of this investigation was **FORD**, baseline database checks were completed. Included in the database checks was a phone number associated with **FORD** which is XXX-XXX-2451. The entire phone number is known to me but is anonymized here.



16.     Additionally, MV1 shared with AW1 a voice recording she had received from her boyfriend. A man's voice can be heard stating the following to MV, "Hi baby, I miss you and I love you and I hope you are having a good day. I know it is still early. But daddy loves you and daddy misses you and you are my beautiful baby girl." AW2 listened to the voice message and believed that the voice was consistent with **FORD**'s. AW2 believed this was **FORD** "without a shadow of a doubt." When investigators sought to learn how AW2 was so confident, AW2 explained to investigators he had known **FORD** for approximately two years and worked closely with **FORD** nearly every day in their current assignments at the Lane CSO.

17.     As part of their ongoing communications, MV1 explained to AW1 that she was born and raised in ██████ and is younger than 15 years old. MV1 was attending a school in ██████. MV's mother is from China, and MV's father is from the United States. MV1 disclosed to AW1 that when she communicates with **FORD**, MV1 has to turn her camera on, but

**Affidavit of** ██████                                                                 **Page 7**

**FORD** never turns his camera on.  Additionally, **FORD** makes MV1 take her clothes off on camera and sometimes ask MV1 to "send nudes."  MV1 stated in the chats to AW1 "I love him sm I do sm stuff for him idk y he would cheat on me" (I know "sm" is shorthand for "so much") and "I send him nudes and I make bracelets with his name on it and a lot of other stuff and we talk everyday."

18.  At one point during their exchange, AW1 inquired with MV1 whether MV1 had conveyed her age to **FORD**.  MV1 responded "yea" and explained that MV1 and **FORD** specifically planned to marry once MV1 became 18.

19.  MV1 sent a screenshot of the profile that communicated with her. The depicted photograph was sent to AW1 by MV:



*Telegram subpoena*

20.     On July 17, 2026, FBI sent a subpoena to Telegram for the subject account @Millwoker123 that was sent by MV.  On July 22, 2026, an email was received from Telegram that included a response to the subpoena. The response included information associated with the account username @Millworker123. According to the response from Telegram, @Millworker123 was associated with the name "Jake" and with telephone number XXX-XXX-2451, the same phone number associated with **FORD** based on the above baseline database checks.  According to law enforcement databases, the provider for the number ending in 2451 was Cingular Wireless, which is a subsidiary of AT&T.  On July 22, 2026, an administrative subpoena was issued to AT&T for the number ending in 2451.  On July 22, 2026, returns indicated that the financially liable party, billing party and basic user information for that phone number resolve to **FORD**.  Additionally, **FORD**'s residential address and email address were associated with the AT&T returns.  Based on the returns from AT&T, taken with the photographic and audio identifications of **FORD** allegedly sent by the subject to MV, I have probable cause to believe, and I do believe, that **FORD** was and is the user of the Telegram account @Millworker123, the account that was used to communicate with MV.

21.     The Telegram response also included a 'last login' date of July 22, 2026, with an associated IP address that resolved to T-Mobile.  The IP address was unique in that it was an identical IP address that was used to access **FORD**'s Snapchat account on or around July 15, 2026.  Based on the T-Mobile IP address and the close time frame the IP address was used to access both **FORD**'s Snapchat account and Telegram account, I have probable cause to believe, and I do believe, that **FORD** possessed a cellular device associated with a T-Mobile network and used it to access the Snapchat and Telegram account between July 15 and 22, 2026.

**Affidavit of** ▮▮▮▮▮▮▮                                                                                    **Page 9**

*Attempts to Identify MV*

22.    Based on the nature of the investigation and the chats that were communicated by MV, investigators believe MV to be a real individual who resides in Singapore. Investigators also believe MV is a minor. As of the time of this submission, ongoing attempts are being made to identify MV in Singapore with certainty. Even without interviewing or obtaining foreign records of MV, investigators believe she is who she claims to be. This is, in part, because MV stated in the chats her first name was and how old she was. MV also gave the month and day she was born. This was consistent with her TikTok profile username, which I have seen and which ends in a series of numbers that are the same as MV's claimed date of birth.

23.    MV also stated she went to a specific school in ███████. Investigators confirmed that the school she referenced in the chats is, in fact, a real school in ███████. According to the school's public website, it serves students from 18 months old through Grade 12. The school details that the Upper Secondary program includes Grades 9-12, for students aged 14 to 18, which is consistent with MV's claimed age.

24.    MV advised in the chats she attempted to reach out to AW1 on Facebook. Knowing that MV claimed to have a Facebook, investigators searched and found what they believed to be MV's Facebook page. The account displays the same profile photograph as the one displayed in MV's TikTok account that she used to communicate with AW1, and it is consistent with her first name as provided to AW1.

25.    On or around July 15, 2026, an administrative subpoena was sent to Meta for subscriber account information for the Facebook that investigators believed to belong to MV. On July 22, 2026, returns were received which gave a first and last name of the user of the

**Affidavit of** ███████████                                          **Page 10**

account and a recovery Gmail account.  The first name was consistent with the name MV gave to AW1 in the chats.

26.     On or around July 22, 2026, an administrative subpoena was sent to Google for the Gmail account associated with MV's Facebook account for additional information that would help identify MV.  On July 22, 2026, returns were received which included the same first name that was consistent with all of MV's accounts and was consistent with the name she gave AW1 in the chats on TikTok.  Additionally, there was IP address information included in the returns. Some of the IP addresses that were used to login to the Gmail account in January 2026 resolved to ███████.

27.     In an attempt to identify MV with certainty, investigators tried to determine MV's parentage and became aware of MV's possible father, a man with contact information in New Jersey.  Agents attempted to contact that man but were unsuccessful and ended up speaking with his significant other.  In order to remain covert, agents used a ruse suggesting that MV had been the victim of identity theft.  The man's significant other claimed he had no children.  However, on July 28, 2026, AW1 conveyed to investigators that MV was aware of law enforcement's inquiry.  Based on this fact, I believe that the man was informed by his significant other of the inquiry, and that the man then communicated with MV that such an inquiry was underway. While investigators do not know why the man's significant other would claim he was not MV's father, this confirmed to investigators that he at least knows MV, is in communication with her, and shared the fact that investigators had inquired about her.

28.     Also on July 28, 2026, AW1 conveyed to investigators that, based on texts exchanged with MV, she was aware the ruse investigation originated in Oregon.  MV conveyed to AW1 that she advised **FORD** of the inquiry.

**Affidavit of** ███████████                                                        **Page 11**

29.    Additionally, on July 28, 2026, AW2 informed investigators that he observed **FORD** to be concerned, uncomfortable, and as if something is wrong, in AW2's opinion and observation.  AW2 also informed investigators that **FORD** appears to be sending and/or receiving numerous text messages based on AW2's observations of **FORD**'s use of his cell phone.  Based on my training, knowledge, and experience, taken with what I know about the ruse contact and AW1's communications with MV, I believe AW2's observations are indicative of **FORD**'s contact with MV about the inquiry, and **FORD**'s apparent change in mood and behavior is indicative of his detection of law enforcement's investigation into his contact with MV.

30.    Based on the information listed above and that investigators were able to determine thus far in the investigation, I have probable cause to believe and I do believe, that MV is in fact a minor and resides in ██████ and was in communication with **FORD** via Telegram where sexually explicit photographs were sent and received by MV.

*Search warrant and contents of **FORD**'s device*

31.    Based on the above information, investigators applied for a search warrant for **FORD's** person, vehicle, premises, and a work locker.  On July 28, 2026, the Honorable Amy E. Potter, United States Magistrate Judge for the District of Oregon authorized the warrant. Investigators proceeded to execute it the same day.

32.    As part of the execution of the search warrant, agents seized and searched **FORD's** cellular phone, which they unlocked using his biometric signature.  Agents observed the Telegram application on his cell phone, consistent with MV1's description of how she was communicating with **FORD**.

33.     Agents opened the Telegram application to review and ascertain whether **FORD** was, in fact, in contact with MV1.  The first available message showing up on **FORD**'s cell phone apparently associated with MV1 was sent on 0839, the morning of investigators' execution of the warrant.  The messages MV1 sent are coming from a username with which **FORD** appears unfamiliar based on his response.  MV1 indicated she was advising **FORD** that law enforcement had made contact with MV1's family.  MV1 mentioned that the FBI was potentially involved and asked **FORD** to reply.  **FORD** indicated to MV1 that he did not recognize the username with which she was contacting him.  Investigators have not yet observed additional conversations between **FORD** and MV1 on **FORD**'s device.

34.     In **FORD's** Google Photos, investigators observed two videos of 30-minute and 46-minute length, each of which appeared to be screen recordings of pubescent minors engaged in sexual activity to include nudity and masturbation.  I believe these videos constitute child pornography, as is defined in federal law.  In the longer of the two screen recordings, which appears to be dated June 14, 2026, investigators note that an apparent minor victim ("Minor Victim 2" or "MV2") can be observed communicating with an individual who is not depicted in the video.  The audio only displays what MV2 is saying.  Among other things, MV2 repeatedly displays her vagina.  MV2 appears to be and sounds distressed, she also indicates reluctance to show her vagina on camera.  At one point, the camera is pointed at the ground, she briefly points it back at herself and pulls her underwear to show her vagina.  Specifically, she says, "You already saw it."  Based on investigators' observation, this appears to reflect that another person is instructing MV2.  Toward the end of the 46-minute video, MV2 appears to be crying.  As of the time of this submission, investigators cannot ascertain who MV2 was communicating with and what they were saying.

**Affidavit of** ▮▮▮▮▮▮▮                                                                        **Page 13**

35.    On or about June 26, 2026, in a Telegram conversation, **FORD** was communicating with a user who purported ▮ years old ("Minor Victim 3" or "MV3").  That user's screenname is known to me and I observed the chats, including that MV3 claimed to be ▮ years old early in the conversation.  **FORD** said "so you're ▮ huh?"  He then asked, "Do you mind that I'm 30?"  I note that **FORD** was born in 1986, with a birth date in December.  MV2 says she does not.  Beyond attesting to being ▮ years old, MV3 shared a screenshot with **FORD** depicting her testing score in her AP World History class.  The screenshot displayed how MV2's score contribute to her college admissions attempts.  Based on my experience, I know that AP World History is a high school "advanced placement" class taken by minors.  After receiving MV3's score, **FORD** told MV3, "Daddy is so proud of you!"

36.    By July 5, 2026, the chats between **FORD** and MV3 had developed into clear sexual exchanges.  Specifically, at one point MV3 says "I'm so wet," to which **FORD** responds, "Show me."  MV3 then sent **FORD** a photograph depicting a vagina with spread labia.  **FORD** stated "mmmmm there it is" followed by three drooling emojis.  MV3 sent a sexual message **FORD** indicating interest in his penis.  **FORD** responded, "I want it deep in that teen pussy."  MV3 responded with additional sexual messages and another image similar to the first image depicting the vagina.

37.    **FORD** then said, "I want my cock inside you so bad."  MV3 responded with additional sexual messages.  **FORD** then said "got any carrots?"  MV3 responded in the affirmative.  **FORD** then said, "use it hehe" to which MV2 responds, "wanna see?"  **FORD** then says, "YESSS."  MV3 thereafter sends a video approximately twelve seconds in length depicting what appears to be a carrot penetrating a vagina.

**Affidavit of** ▮                                                                                            **Page 14**

38.     In response to the carrot video, **FORD** asked MV3 how it felt, to which she responds with some negative descriptors. **FORD** then asked, "Would a brush be better?" MV3 said she can try one and asked **FORD** if she should. **FORD** said, "Yes. But first get it wet with your mouth like you're sucking daddy's cock." MV3 then sent a video that is approximately nineteen seconds in length depicting a minor female inserting a brush handle first into her mouth and then into her vagina, as instructed by **FORD**.

39.     Investigators note that the most recent messages exchanged in **FORD's** conversation with MV3 were sent the morning of July 28, 2026, the day the search warrant was executed. **FORD** stated, "Good morning sunshine!" and "How's my baby?"

40.     On June 12, 2026, **FORD** communicates with a self-described ███ year old ("Minor Victim 4" or "MV4"). When **FORD** learns her age and she asks his, he says "30 is that okay?" Thereafter, the conversation becomes sexual. Specifically, in one exchange, MV4 describes not having panties on. **FORD** responds, "Mmmm lemme see that little cunnie," which investigators know to be a slang term for vagina. MV4 responds by sending **FORD** a photograph of a nude vagina with her labia spread. MV4 then asks, "this good?" to which **FORD** responds, "FUCK YESSSS I love it so much send me a vid!" MV4 then sent **FORD** a 20-second video of herself masturbating. **FORD** responds by complimenting MV4's vagina.

41.     Investigators note that this is not an exhaustive description of all communications with actual or purported minors and that a thorough review of **FORD's** device, and potential other devices, continues. Based on a cursory review, the above-described communications appear to be a fraction of **FORD's** similar conversations. Specifically, investigators observed several dozen chat conversations that begin with greetings to include "Hi kiddo" or discussions of age where the chatters are telling **FORD** they are children.

**Affidavit of** ███████████                                           **Page 15**

## Conclusion

42.     Based on the foregoing, I have probable cause to believe, and I do believe, that **Dylan FORD** committed the Target Offenses in violation of Title 18, United States Code Sections 2251(a) and (e) (production of child pornography and attempt), 2422(b) (enticement of a minor and attempt), and 2252A(a)(2) (receipt of child pornography and attempt).  I therefore request that the Court issue a criminal complaint and arrest warrant for **Dylan FORD**.

43.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) William M. McLaren, and AUSA McLaren advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Affidavit of** ███████████                                              **Page 16**

**Request for Sealing**

44.     It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant.  I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may seriously jeopardize an investigation.  Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

*By phone pursuant to Fed. R. Crim. P. 4.1*

██████████████

Special Agent, FBI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at

6:17 p.m.             a.m./p.m. on July 28, 2026.

HONORABLE AMY E. POTTER
United States Magistrate Judge

**Affidavit of** ████████████                                               **Page 17**